[Cite as *State v. Graves*, 2011-Ohio-5997.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

ALBERT GRAVES

    Appellant

C.A. No.      08CA009397

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     04-CR-065187

DECISION AND JOURNAL ENTRY

Dated: November 21, 2011

---

DICKINSON, Judge.

## INTRODUCTION

**{¶1}** In August 2004, Albert Graves was riding in the back seat of a sedan traveling east on Interstate 80 in Lorain County, when the Ohio State Highway Patrol stopped the car due to traffic violations. Police found crack cocaine, powder cocaine, and marijuana in the trunk. This matter is before the Court as a reopened appeal. See App. R. 26(B). Mr. Graves's appellate lawyer was ineffective for failing to assign allied offenses as error. Therefore, our March 16, 2009, judgment in this case is vacated. App. R. 26(B)(9). This Court reverses the judgment of the Lorain County Common Pleas Court because the State did not present sufficient evidence that, if believed, could convince the average finder of fact of Mr. Graves's guilt beyond a reasonable doubt.

BACKGROUND

**{¶2}** Trooper Mark Neff found three men inside the car he had stopped. James Williams was driving, Moriba Ramsey was in the front passenger seat, and Mr. Graves was in the back. Trooper Neff grew suspicious when he was unable to confirm that Mr. Williams had a valid driver's license. Furthermore, although Mr. Williams and Mr. Ramsey both told him that Mr. Ramsey had borrowed the car from a female, they gave different names for the car's owner and different information about her relationship to Mr. Ramsey.

**{¶3}** Due to weather conditions, Trooper Neff determined that the car needed to be pulled off the highway, and he asked whether either of the two passengers could legally drive. Mr. Graves indicated that he had a valid license, so the trooper directed him to move from the back seat to the driver's seat in order to drive the car to a nearby highway maintenance facility where a K-9 unit was waiting. Police required the men to leave the car before the dog was brought over to it. Police patted down each man before placing him inside Trooper Neff's vehicle. They found a film canister full of marijuana roaches on Mr. Williams, but no contraband on the other two men.

**{¶4}** The trooper's dashboard camera produced a videotape of the search of the car while the audio part of the tape recorded a feed from two microphones. Trooper Neff wore one microphone and the other was mounted inside his vehicle. Thus, the audio part of the tape includes conversation among the three men while they watched the search of their car unfold.

**{¶5}** Police found a small amount of marijuana under the front passenger seat. They found no other contraband inside the passenger compartment. When they searched the trunk of the car, they found nothing illegal inside a backpack or a duffle bag. Underneath those bags, police found a plastic grocery bag. Inside the grocery bag, they found marijuana, cocaine, and a

Footlocker shoe store bag containing 1160 grams of crack cocaine. There was evidence that the backpack belonged to Mr. Williams. There was no evidence about who owned the duffle bag. Although police dusted both the grocery bag and the Footlocker bag for fingerprints, they found none.

{¶6} On the videotape that the State played for the jury, Mr. Williams and Mr. Ramsey can be heard discussing the search as it progresses. Before the troopers located the drugs in the trunk of the car, both Mr. Williams and Mr. Ramsey made statements that indicate that they knew that something illegal was in a bag in the trunk of the car. Mr. Graves only spoke a few times during the forty-five minute recording. Mr. Graves's voice is much deeper than the other two voices and is much more difficult to hear and understand on the tape.

{¶7} Mr. Graves was arrested and charged with one count of possession of cocaine and one count of trafficking in cocaine, both first-degree felonies and both carrying a major drug offender specification. He was also charged with a fourth-degree felony count of trafficking in marijuana, a fifth-degree felony count of possession of marijuana, and a fifth-degree felony count of possession of cocaine.

{¶8} In April 2008, a jury found him guilty on all counts, and he was sentenced to an aggregate prison term of eleven years. He appealed, and this Court affirmed his convictions in March 2009. *State v. Graves*, 9th Dist. No. 08CA009397, 2009-Ohio-1133, not accepted for review, 122 Ohio St. 3d 1521, 2009-Ohio-4776. This Court later granted his application to reopen his appeal based on claims of ineffective assistance of counsel focusing on his sentences for allied offenses.

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

{¶9}    Under Rule 26(B)(9) of the Ohio Rules of Appellate Procedure, "[i]f th[is] [C]ourt finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, [it] shall vacate its prior judgment and enter the appropriate judgment.   If th[is] [C]ourt does not so find, [it] shall issue an order confirming its prior judgment."   Deficient performance by a lawyer is a performance that falls below an objective standard of reasonable representation.  *State v. Hale*, 119 Ohio St. 3d 118, 2008-Ohio-3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).  A defendant is prejudiced by the deficiency if there is a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different.  *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Upon review of the record, this Court has determined that Mr. Graves's appellate lawyer's performance was deficient because he did not assign as error Mr. Graves's concurrent sentences on allied offenses of similar import.

{¶10}  Mr. Graves's first assignment of error is that the trial court committed plain error by imposing separate sentences for possession and trafficking of the same drugs.  The State has conceded that Mr. Graves was incorrectly sentenced on allied offenses for possession and trafficking of crack cocaine and marijuana, but has requested that this Court exercise its power under Section 2953.08(G)(2) to modify the sentences rather than remanding for a resentencing hearing.  Recognizing that it must elect which offense it wishes to pursue, the State has requested that this Court merge the possession and trafficking offenses for each drug, sentencing Mr. Graves only on the trafficking counts.

{¶11} Under Section 2941.25(A) of the Ohio Revised Code, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." The Ohio Supreme Court has held that it is plain error to impose individual sentences for multiple counts that constitute allied offenses of similar import. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, at ¶31. The State has conceded that Mr. Graves's possession and trafficking charges for each drug should have been merged into one conviction for marijuana and one for crack cocaine. Mr. Graves's appellate lawyer was ineffective for failing to assign as error the separate convictions for trafficking and possession of the same drugs. Therefore, we vacate our March 16, 2009, decision in this case and proceed to consider the matter as on direct appeal. See App. R. 26(B)(7).

## SUFFICIENCY OF THE EVIDENCE

{¶12} Mr. Graves's fifth assignment of error is that his convictions are not supported by sufficient evidence. The State has argued that the Ohio Rules of Appellate Procedure forbid us from addressing Mr. Graves's argument in regard to the possession convictions because we previously considered similar arguments as part of his original appeal.

{¶13} Under Rule 26(B)(7) of the Ohio Rules of Appellate Procedure, this Court "may limit its review [of a reopened appeal] to those assignments of error and arguments not previously considered." Contrary to the State's argument, the rule does not prohibit this Court from reviewing the sufficiency of the evidence despite the fact that it was challenged in the original appeal. Appellate Rule 26(B)(7) provides that this Court "may" limit its review to arguments not previously considered, but does not mandate that it do so. Having vacated our

prior judgment in this case, we will now proceed to consider Mr. Graves's assignments of error "as on an initial appeal." App. R. 26(B)(7), (9).

{¶14} Mr. Graves has argued that his convictions are not supported by sufficient evidence because there was no evidence that he knew about the drugs in the trunk or that he had possession of the keys to the vehicle. He has argued that he was convicted because he was merely present as a passenger going home from Detroit, Michigan, to Erie, Pennsylvania. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, at ¶33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Graves's guilt beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶15} Section 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." "Possess" means "having control over a thing or substance . . . ." R.C. 2925.01(K). Possession may be actual or constructive and either individual or joint. *State v. McShan*, 77 Ohio App. 3d 781, 783 (1991); *State v. Gibson*, 9th Dist. No. 18540, 1998 WL 225037 at *2 (May 6, 1998). Possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). In order to constructively possess an item, one must be conscious of its presence and able to exercise dominion and control over it. *State v. Hankerson*, 70 Ohio St. 2d 87, 91 (1982). "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." *State v. Ruby,* 149 Ohio App. 3d 541, 2002-Ohio-5381, at ¶30 (citing

*State v. Brooks*, 113 Ohio App. 3d 88, 90 (1996)). Under Section 2925.03(A)(2) of the Ohio Revised Code, "[n]o person shall knowingly . . . transport . . . a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale . . . ."

{¶16} In this case, Mr. Graves did not actually possess any drugs, so the question is whether the State presented sufficient evidence of constructive possession. It is undisputed that Mr. Graves was a back seat passenger in the car and that two other men were riding in the front seat. There was no evidence that Mr. Graves owned the car, had borrowed the car, or that he had ever driven the car prior to the traffic stop. There was no forensic evidence linking him to the drugs, and there was no evidence that he owned any of the items found in the trunk.

{¶17} Mr. Graves has argued that there is no evidence that he had access to the trunk of the car. He has specifically argued that he did not have possession of the keys to the vehicle. At trial, Trooper Neff testified that he thought he had found the key to the car on Mr. Graves when he patted him down. He also said that he thought he could hear on the video that he had asked Mr. Graves "why he had so many keys on him[.]" The record does not include any further testimony about keys.

{¶18} The videotape shows that, at the beginning of the stop, when Mr. Williams stepped out of the car, he left the keys in the ignition. The car's wipers continued to run and the turn signal continued to blink while Mr. Williams talked with Trooper Neff outside the vehicle. Mr. Williams never reentered the car. The trooper testified that he asked Mr. Graves to drive the car to a nearby highway maintenance facility. The video shows Mr. Graves getting into the driver's seat, driving a short distance, turning off the road, and parking the car. When Mr. Graves first stepped out of the car after moving it for the trooper, the wipers and lights were still

on. The video shows that Mr. Graves quickly reentered the car, turned it off, and put the keys into his coat pocket. Seconds later, off camera, the trooper patted him down and asked him why he had so many keys in his pocket. Although Mr. Graves's answer is unintelligible, Trooper Neff responded in a tone indicating that he was satisfied with the answer. There is no evidence that there was more than one key to the car present at the site of the traffic stop. The only reasonable inference from the evidence is that Trooper Neff found Mr. Graves in possession of the key to the car as well as some other unidentified keys. There is no evidence tending to show how many keys were on the keychain with the key to the car. There is no evidence tending to show how many keys Mr. Graves had or why he had more than one key on him when he turned the car off and removed the key.

{¶19} The only argument to be made regarding Mr. Graves having access to the drugs or ability to exercise dominion and control over them is that he had the car keys in his pocket when he was patted down by officers. It is clear from the record, however, that the keys were in the ignition rather than his pocket when the car was stopped by police. Mr. Graves is seen putting the keys into his pocket only after he moved the car at the request of the police. Therefore, regardless of how many keys police found in his pockets, Mr. Graves had the keys to the car because he complied with Trooper Neff's request that he move the vehicle. Under the facts of this case, reasonable jurors could not infer that Mr. Graves exercised dominion and control over the contents of the trunk of the car based on the evidence that police found him in possession of the keys to the car and the testimony that Mr. Graves had "so many keys" on him when he was moved to the cruiser.

{¶20} The record indicates that Mr. Graves had neither the ability to access the trunk of the car nor the ability to exercise dominion and control over its contents. Therefore, regardless

of whether the evidence supports an inference that Mr. Graves knew or suspected that there were drugs in the trunk, there was no evidence that he constructively possessed the drugs by riding in the back seat. See *State v. Hankerson*, 70 Ohio St. 2d 87, 91 (1982).

{¶21} At trial, during closing argument, the State argued to the jury that the videotape depicts Mr. Graves making several statements implying that he knew there were drugs in the trunk. Mr. Graves has argued that, unlike Mr. Williams and Mr. Ramsey, he did not make any statements indicating that he had knowledge of any controlled substances being in the trunk. The prosecutor's closing argument is not evidence. *State v. Frazier*, 73 Ohio St. 3d 323, 338 (1995). There is no transcript of the videotape in the record, and there is little witness testimony about what was said on the tape. There is a lot of ambient noise and static making the audio recording difficult to understand. Even listening to the tape repeatedly while relying on the assertions the State made during closing argument, it is not at all clear that Mr. Graves made the statements attributed to him. The State argued that these statements tended to prove that Mr. Graves knew there were drugs in the trunk of the car and that he wanted to get their stories straight before speaking with police.

{¶22} Even assuming for the sake of argument that the evidence at trial supported each of the State's assertions about Mr. Graves's statements, however, we cannot say the State presented sufficient evidence that, if believed, would convince the average mind of his guilt beyond a reasonable doubt. Construed in the best possible light for the State, the statements the prosecutor attributed to Mr. Graves tend to show that he knew they were in trouble even before the police found the drugs in the trunk and that, after drugs were found, he wanted to get out of trouble. None of the statements Mr. Graves allegedly made on the tape tends to show that he knowingly possessed or transported illegal drugs. Even assuming, without deciding, that there

was sufficient evidence that he knew there were drugs in the car, there was no evidence from which the jury could reasonably conclude that Mr. Graves was able to exert dominion and control over the contents of the trunk.

{¶23} Mr. Graves cannot have possessed something over which he had no control. See R.C. 2925.01(K) ("Possess" means "having control over a thing or substance[.]"). The State did not present sufficient evidence that, if believed, could convince the average mind beyond a reasonable doubt that Mr. Graves constructively possessed the drugs. Furthermore, there was not sufficient evidence that, if believed, could convince the average mind beyond a reasonable doubt that Mr. Graves knowingly transported drugs for sale. There was no evidence that Mr. Graves had any connection to the drugs. Mr. Graves's fifth assignment of error is sustained. Each of Mr. Graves's convictions is based on insufficient evidence. His other assignments of error are moot and are overruled on that basis.

## CONCLUSION

{¶24} Mr. Graves's appellate lawyer was ineffective for failing to assign as error the multiple concurrent sentences for allied offenses of similar import. Therefore, this Court's March 16, 2009, judgment in this case is vacated. Mr. Graves's fifth assignment of error is sustained because the State did not present sufficient evidence that, if believed, could convince the average finder of fact beyond a reasonable doubt that Mr. Graves possessed or trafficked in the drugs found in the trunk of the car in which he was riding as a back seat passenger. The judgment of the Lorain County Common Pleas Court is reversed, and the cause is remanded.

> Judgment reversed,
> and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BILLIE JO BELCHER, Assistant Prosecuting Attorney, for Appellee.