[Cite as *State v. Acevedo*, 2016-Ohio-7344.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.      14CA010710 |
|      Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LUIS A. ACEVEDO, JR. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
|      Appellant | CASE No.      13CR086852 |

DECISION AND JOURNAL ENTRY

Dated: October 17, 2016

WHITMORE, Judge.

{¶1} Appellant, Luis Acevedo, appeals from the November 5, 2014 judgment of the Lorain County Court of Common Pleas. This Court affirms.

I

{¶2} On February 26, 2013, the Lorain Police Narcotics Department, Lorain County Drug Task Force, Drug Enforcement Administration (DEA), and Alcohol, Tobacco and Firearms Administration (ATF) executed a search warrant at 3237 Charleston Avenue, Lorain, Ohio. This search warrant stemmed from an ongoing investigation into a drug trafficking organization run by Jose Romero. Once inside, Detective Geno Taliano located Mr. Acevedo, Mr. Romero's brother, sleeping in a locked bedroom near the front of the house. A search of the bedroom uncovered the following: (1) a handgun with a magazine, but no rounds in it; (2) sandwich baggies; (3) digital scales; (4) a bag of marijuana; and (5) a small, black Sentry safe containing heroin and other drug related items.

{¶3} Mr. Acevedo was indicted on (1) one count of trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the first degree; (2) one count of possession of heroin, in violation of R.C. 2925.11(A), a felony of the second degree; (3) one count of possessing criminal tools, in violation of R.C. 2923.24(A), a felony of the fifth degree; and (4) one count of possession of marijuana, in violation of R.C. 2925.11(A), a minor misdemeanor. The indictment also included a gun specification and property forfeiture specification as to counts one and two.

{¶4} A jury trial commenced wherein the following witnesses testified on behalf of the State: (1) Detective Christopher Colon; (2) Detective Geno Taliano; (3) Elizabeth Doyle; (4) Officer Jesse Perkins; (5) Detective Olen Martin; (6) Officer Robert Hargreaves; and (7) Detective Michael Gidich. Further, Virginia Gonzalez testified on behalf of Mr. Acevedo.

{¶5} The jury acquitted Mr. Acevedo of trafficking in drugs and found him guilty of possession of heroin, possessing criminal tools, possession of marijuana, and the gun specification. The trial court sentenced Mr. Acevedo to an aggregate term of five years imprisonment, along with an aggregate fine of $7,650.

{¶6} Mr. Acevedo now appeals, raising two assignments of error.

II

Assignment of Error Number One

[MR. ACEVEDO'S] CONVICTIONS ARE BASED UPON INSUFFICIENT EVIDENCE[.]

{¶7} Initially, we note that, although Mr. Acevedo's captioned assignment of error challenges his "convictions," he limits his argument to his conviction for possession of heroin. "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7). "This Court will not create an argument

on the behalf of an appellant." *Id*., citing *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Accordingly, we limit our discussion to Mr. Acevedo's conviction for possession of heroin.[1]

{¶8} In his first assignment of error, Mr. Acevedo argues that there is insufficient evidence to uphold his conviction for possession of heroin. Specifically, Mr. Acevedo argues that the State did not prove that he had dominion and control over the contents of the small, black Sentry safe because there was no evidence that Mr. Acevedo had a key to the safe. In support of this argument, Mr. Acevedo relies upon this Court's decision in *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997.

{¶9} In response, the State argues that it presented sufficient evidence to prove that Mr. Acevedo exercised dominion and control over the items found in his bedroom at 3237 Charleston Avenue, including the contents of the small, black Sentry safe. Further, the State argues that this matter is distinguishable from *Graves* because of the *amount* of evidence submitted at trial regarding Mr. Acevedo's dominion and control over the contents of the bedroom, including that: (1) the door to the bedroom was locked, (2) the items were found in close proximity to Mr. Acevedo's bed, (3) Mr. Acevedo admitted to living at 3237 Charleston Avenue, (4) marijuana, a gun, and digital scales were found in the bedroom, (5) mail was found addressed to Mr. Acevedo, and (6) Mr. Acevedo became "defensive, nervous, and agitated" and disclaimed ownership of the safe when it was brought out of the bedroom.

---

[1] We note that Mr. Acevedo also argues that there is insufficient evidence to support that he was complicit in the crime of possession of heroin. However, the jury only received a complicity instruction as to the crime of trafficking in drugs, for which Mr. Acevedo was found not guilty. As such, we decline to discuss complicity as to Mr. Acevedo's conviction for possession of heroin.

{¶10} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶11} Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]" "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Further, pursuant to R.C. 2925.01(K), "[p]ossess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21(F)(1) states that "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."

{¶12} This Court has repeatedly held that "a person may knowingly possess a substance or object through either actual or constructive possession." *State v. See,* 9th Dist. Lorain No. 08CA009511, 2009-Ohio-2787, ¶ 10, quoting *State v. Hilton,* 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16. "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Reis,* 9th Dist. Summit No. 26237, 2012-Ohio-2482, ¶ 7, quoting *State v. Kendall*, 9th Dist. Summit No. 25721, 2012-Ohio-1172, ¶ 14, quoting *State v. Hankerson,* 70 Ohio St.2d 87 (1982), syllabus. We have also recognized that "'the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." (Alteration sic.) *Graves*, 2011-Ohio-5997, ¶ 15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30 (2d Dist.). "Inherent in the notions of dominion and control is some authority over the object, not merely the ability to have access to it." *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 11, citing R.C. 2925.01(K). "[C]onstructive possession [of drugs] may be inferred from the drugs' presence in a usable form and in close proximity to the defendant." *State v. Figueroa,* 9th Dist. Summit No. 22208, 2005-Ohio-1132, ¶ 8, citing *State v. Thomas,* 9th Dist. Summit No. 21251, 2003-Ohio-1479, ¶ 11. In addition, "[c]ircumstantial evidence is itself sufficient to establish dominion and control over the controlled substance." *Hilton* at ¶ 16.

{¶13} Detective Colon testified that he had been using a confidential informant to investigate a drug trafficking operation run by Mr. Acevedo's brother, Mr. Romero. Through working with the confidential informant, Detective Colon obtained intelligence on Mr. Romero, his family, and the "way the [drug] organization was being run." Detective Colon described the family's living situation as a "compound" consisting of four units. Mr. Acevedo lived at 3237

Charleston Avenue, the "middle unit," with his grandmother, Ms. Gonzalez. Further, Detective Colon testified that the following "things" were recovered from the room where Mr. Acevedo was found sleeping: a handgun with a magazine, but no rounds inside it, sandwich baggies, several digital scales, "40 some grams of marijuana," and a small, black Sentry safe in an "open closet" with no doors. After obtaining an additional search warrant to "pop[] the lock" on the safe, the police found a jar containing a white substance (later determined to be caffeine and lidocaine), a black Sharpie marker, mason jars filled with marijuana, a baggie containing approximately 44 grams of heroin, and ten razor blades.

{¶14} Detective Taliano testified that immediately upon entering 3237 Charleston Avenue, the police encountered a locked doorway to the southwest bedroom. Detective Taliano "banged on the door several times," and when there was no response, he "forced the door open and made entry." At this time, he discovered Mr. Acevedo lying in bed with covers pulled up to his chin. Detective Taliano ordered Mr. Acevedo to "show [his] hands." When Mr. Acevedo failed to comply, Detective Taliano straddled him, put his service weapon against Mr. Acevedo's face, and again told him "I want to see your hands." Mr. Acevedo complied and was removed from the bedroom. After Mr. Acevedo was removed from the bedroom, Detective Taliano made a cursory search of the room and found a loaded ".25 auto Ray gun" in a small end table "immediately next to [Mr. Acevedo's] bed," and several drug related items or paraphernalia.

{¶15} Ms. Doyle, a forensic analyst, testified that the Lorain Police submitted for testing several substances found at 3237 Charleston Avenue. According to State's Exhibit 42, Ms. Doyle found these substances positive for (1) heroin, a schedule I controlled substance, (2) marijuana, a schedule I controlled substance, and (3) caffeine and lidocaine.

{¶16} Officer Perkins testified that, after Mr. Acevedo had been removed from the bedroom, he located the small, black Sentry safe in an open closet. Officer Perkins explained that "[t]here were several piles of male's clothes and also several stacks of shoe boxes. The safe was in the stacks with the shoe boxes." Additionally, on direct examination, Officer Perkins described Mr. Acevedo's reaction when he brought the safe out from the bedroom into the main entry way:

> Q. Did you remove that safe from the closet or did somebody else?
> A. I did.
> Q. And was [Mr.] Acevedo present when you removed that safe?
> A. He was in the room outside of the bedroom that I brought the safe to. I brought it from the bedroom out into the main entry area where the officer conducting the inventory was and that's also where he was at.
> Q. And did you observe anything on his part when you brought the safe out?
> A. He became very defiant, very agitated when I brought it out. I had brought out the scales prior to and there was really no change in behavior. When the safe was brought out he became defiant saying that's not mine. I don't know where that came from.
> Q. Had you asked him if it was his?
> A. No. I did not speak to him at all.
> Q. Throughout your training and experience dealing with narcotics, is there something significant about him making those comments?
> A. Usually in my training and my experience when people try to distance themselves [from] something there is a reason why, especially when narcotics are involved or guns are involved.
> * * *

Officer Perkins also testified that the safe was "[m]aybe four to six feet at [] most" from Mr. Acevedo's bed.

{¶17} Detective Gidich testified that, during surveillance, he personally observed Mr. Acevedo standing out front of 3237 Charleston Avenue, and that he also observed Mr. Acevedo "coming and going from that residence." Detective Gidich reinforced Officer Perkins' testimony, that, when the safe was brought out into the main entry way, Mr. Acevedo "immediately became defensive and nervous, said it wasn't his safe, said the bedroom was his but that [the] safe wasn't his and someone dropped it off, he doesn't remember who or when or

where, but that someone dropped it off in his bedroom." When questioned about Mr. Acevedo's demeanor regarding the safe, Detective Gidich stated:

> He was very defensive about it, which is not uncommon, we go through that a lot, jeans, bags, coats, you'll go through, search the whole house, find guns, all kinds of different things and you touch one item and people start to separate themselves from that item almost immediately once they realize that it was found and distance themselves from it when they know there's contraband located inside.

Finally, Detective Gidich testified that he found mail and "other pertinent paperwork" addressed to Mr. Acevedo at 3237 Charleston Avenue, Lorain, Ohio, and that Mr. Acevedo requested certain items of his clothing from the bedroom closet before being removed from the premises.

{¶18} In *Graves*, 2011-Ohio-5997, ¶ 7, 24, this Court reversed Mr. Graves' convictions for possession of and trafficking in drugs based upon insufficient evidence that Mr. Graves constructively possessed the drugs. Mr. Graves was the backseat passenger in a vehicle travelling from Detroit, Michigan to Erie, Pennsylvania. *Id.* at ¶ 1, 14. The police stopped the vehicle due to traffic violations and found "marijuana, cocaine, and a Footlocker shoe store bag containing 1160 grams of crack cocaine," in the trunk of the vehicle. *Id.* at ¶ 1, 5. In reversing Mr. Graves' convictions, we reasoned that "[t]here was no evidence that Mr. Graves owned the car, had borrowed the car, or that he had ever driven the car prior to the traffic stop. There was no forensic evidence linking him to the drugs, and there was no evidence that he owned any of the items found in the trunk." *Id.* at ¶ 16. Further, we noted:

> The only argument to be made regarding Mr. Graves having access to the drugs or ability to exercise dominion and control over them is that he had the car keys in his pocket when he was patted down by officers. It is clear from the record, however, that the keys were in the ignition rather than his pocket when the car was stopped by police. Mr. Graves is seen putting the keys into his pocket only after he moved the car at the request of the police. Therefore, regardless of how many keys police found in his pockets, Mr. Graves had the keys to the car because he complied with Trooper Neff's request that he move the vehicle. Under the facts of this case, reasonable jurors could not infer that Mr. Graves exercised dominion and control over the contents of the trunk of the car based on the

evidence that police found him in possession of the keys to the car and the testimony that Mr. Graves had "so many keys" on him when he was moved to the cruiser.

*Id*. at ¶ 19.

**{¶19}** However, the facts of *Graves* are easily distinguishable from the present matter. In *Graves,* it was clear that Mr. Graves (1) did not own the vehicle; (2) was not driving the vehicle at the time of the stop; and (3) did not possess a key to the locked trunk of the vehicle until after the officer instructed him to move the vehicle from the side of the road to a highway maintenance facility. *See Graves* at ¶ 16, 19. Therefore, in *Graves*, there was no evidence that Mr. Graves asserted any authority over the vehicle or over the drugs found locked in the trunk of the vehicle, which were outside his immediate control prior to the stop. In the present matter, the testimony established Mr. Acevedo's control over the room and the contents found therein, which included the safe. The mere fact that the safe was locked does not, in and of itself, bring it within the ambit of the locked vehicle trunk in *Graves*.

**{¶20}** Mr. Acevedo was sleeping in a *locked* bedroom with a gun, drug paraphernalia, marijuana, and a small, black Sentry safe containing, among other things, heroin. The safe was in an open closet with no doors, approximately four to six feet away from Mr. Acevedo's bed. Additionally, the closet contained men's clothing and shoe boxes, and Mr. Acevedo requested specific items of clothing from the bedroom prior to being transported by the police. The gun, with a full magazine, was in a night stand next to the bed. The jury heard testimony that Mr. Acevedo admitted "the bedroom was his," and that Detective Gidich found mail addressed to Mr. Acevedo at 3237 Charleston Avenue, Lorain, Ohio. Additionally, the jury heard testimony that Mr. Acevedo's demeanor suddenly changed when he saw Officer Perkins bring the safe, containing heroin, out of the bedroom. Both Officer Perkins and Detective Gidich testified that

Mr. Acevedo became agitated and defensive about the safe, and that he immediately disclaimed ownership of the safe. Officer Perkins and Detective Gidich also discussed that people in these types of situations commonly try to separate themselves from an incriminating item, such as a safe containing heroin.

{¶21} Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a finding that Mr. Acevedo committed the crime of possession of heroin. Although the State did not produce evidence that Mr. Acevedo had a key to the safe at the time of his arrest, a reasonable jury could still conclude that Mr. Acevedo knowingly exercised dominion and control over the heroin in the safe, even though it may not have been within his immediate physical possession. *See Reis,* 2012-Ohio-2482, ¶ 7. Based upon the above stated facts, a rational trier of fact could have found the essential elements of possession of heroin proven beyond a reasonable doubt. *See Jenks,* 61 Ohio St.3d at paragraph two of the syllabus.

{¶22} Mr. Acevedo's first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

[MR.ACEVEDO'S] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶23} In his second assignment of error, Mr. Acevedo argues that his convictions are against the manifest weight of the evidence because the State failed to present any evidence that he was complicit in Mr. Romero's drug trafficking organization. Specifically, Mr. Acevedo argues that this case supports only two possible interpretations of the evidence: either (1) Mr. Acevedo "is a criminal mastermind" able to fly under the police's radar during their multiple year investigation of Mr. Romero's drug trafficking organization, or (2) Mr. Acevedo innocently spent the night at his grandmother's house where Mr. Romero hid his guns and drugs.

{¶24} In response, the State argues that Mr. Acevedo's argument is misplaced because he only relies upon facts that would establish whether he was complicit with Mr. Romero's drug trafficking organization. However, the jury acquitted Mr. Acevedo of trafficking in drugs, but found him guilty of possession of heroin, with a gun specification, possessing criminal tools, and possession of marijuana. Complicity was not at issue in these remaining crimes.

{¶25} In determining whether a conviction is against the manifest weight of the evidence, an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶26} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *see also Otten* at 340.

{¶27} "Credibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'" *State v. Just,* 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42, citing *State v. Violett,* 9th Dist. Medina

No. 11CA0106-M, 2012-Ohio-2685, ¶ 11; *State v. Cross,* 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶28} Here, the jury heard testimony from the State's witnesses, as detailed above in the first assignment of error, and reviewed the State's exhibits, including, (1) photographs of the bedroom where Mr. Acevedo was sleeping, (2) photographs of the open closet containing men's clothing, shoe boxes, and the small, black Sentry safe, (3) photographs of the gun, digital scales, drugs, and other drug paraphernalia found in Mr. Acevedo's bedroom, (4) the forensic laboratory report identifying the substances found at 3237 Charleston Avenue, (5) photographs of the families' "compound" of housing units, and (6) photographs of the large gun safe and weapons found at 3237 Charleston Avenue.

{¶29} However, the jury also heard the testimony of Ms. Gonzalez, Mr. Acevedo and Mr. Romero's grandmother. Ms. Gonzalez testified that she has lived by herself at 3237 Charleston Avenue, and, at the time of his arrest, Mr. Acevedo permanently resided with his mother at a different address. Ms. Gonzalez also testified that Mr. Acevedo spent the night before his arrest at her house because she was not feeling well, and that Mr. Acevedo would stay with her two to three times per month. Ms. Gonzalez further explained that the clothes and shoes in the closet belonged to her other grandson, Miguel, who is in prison. The jury also heard Ms. Gonzalez testify that: (1) although she cleaned the bedroom, she never saw the small, black Sentry safe in the closet, (2) she did not know who the large gun safe belonged to, (3) she did not see multiple assault rifles, in plain view, in her dining room, and (4) she would lie for her grandsons if she had to, even with the possibility of going to jail for lying.

**{¶30}** Additionally, the jury had the opportunity to review Mr. Acevedo's exhibits, including: (1) the affidavit of Detective Colon submitted to obtain a search warrant for 3237 Charleston Avenue, wherein Mr. Acevedo's name is not mentioned; (2) a search warrant for 3237 Charleston Avenue, wherein Mr. Acevedo's name is not mentioned; (3) a report regarding the execution of the search warrant; and (4) a Lorain Police Narcotics Investigation Report detailing the investigation into Mr. Romero's drug trafficking organization, wherein Mr. Acevedo is identified as Mr. Romero's brother living at 3237 Charleston Avenue, but is not otherwise mentioned as being involved in the drug trafficking organization.

**{¶31}** Based upon the evidence presented at trial, the jury found that Mr. Acevedo was not guilty of drug trafficking, but was guilty of possession of heroin, with a gun specification, possession of marijuana, and possessing criminal tools. Having reviewed the record, we cannot conclude that the jury clearly lost its way or created a "manifest miscarriage of justice." *Otten,* 33 Ohio App.3d at 340. Although conflicting testimony was presented regarding Mr. Acevedo's place of residence and the extent of his involvement in Mr. Romero's drug trafficking organization, we refrain from overturning the verdict because the jury chose to believe one version of events as opposed to another. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." *State v. Gilliam*, 9th Dist. Lorain No. 97CA006757, 1998 WL 487085, * 2 (Aug. 12, 1998).

**{¶32}** Mr. Acevedo's second assignment of error is overruled.

### III

**{¶33}** Mr. Acevedo's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

14

                                                        Judgment affirmed.

                              _____

        There were reasonable grounds for this appeal.

        We order that a special mandate issue out of this Court, directing the Court of Common

Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of

this journal entry shall constitute the mandate, pursuant to App.R. 27.

        Immediately upon the filing hereof, this document shall constitute the journal entry of

judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the

mailing in the docket, pursuant to App.R. 30.

        Costs taxed to Appellant.


                                          _____
                                          BETH WHITMORE
                                          FOR THE COURT



CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant
Prosecuting Attorney, for Appellee.