OPINION
{¶ 1} Defendant-appellant, Shirley Brown, appeals her conviction in the Warren County Court of Common Pleas on one count of complicity to escape.[1] For the reasons set forth below, we affirm appellant's conviction.
 {¶ 2} This case arises out of appellant's involvement with Joseph Huffman, an inmate of the Lebanon Correctional Institution in Warren County, Ohio, following his unauthorized *Page 2 
departure from prison. On a Friday evening in June 2006, Huffman, who was working on the unsecured farm area of the prison, took a state-owned truck and proceeded to drive off the premises. Huffman drove to a Wal-Mart located in Butler County, Ohio, whereupon he exited the truck and asked a passerby, Adrian Dunn, for a ride. Dunn agreed to drive Huffman to a tavern in Covington, Kentucky, and on the way there, allowed Huffman to use his cellular telephone. Huffman called one of appellant's friends, Krista Sweet, who in turn called appellant and put her in contact with Huffman.
 {¶ 3} Appellant had become acquainted with Huffman while he was incarcerated. She wrote him letters and visited him on a regular basis. On the evening in question, appellant agreed to meet Huffman in Covington, Kentucky shortly after speaking with him. She picked him up at a mutual meeting place and drove him to Sweet's apartment in Cincinnati, Ohio. While at Sweet's apartment, appellant provided Huffman with a change of clothes which she had previously purchased for him while he was incarcerated.
 {¶ 4} The two then left the apartment, and appellant drove Huffman back to Kentucky to see various family members. Appellant also allowed Huffman to use her cellular telephone to contact family members and friends while she drove. The two spent the night at the home of one of Huffman's sisters, and the next day, appellant continued driving Huffman to see family members. They eventually made their way to the home of another of Huffman's sisters that night, where they were both apprehended by authorities.
 {¶ 5} Appellant was later indicted on one third-degree felony count of complicity to escape based upon her actions in assisting Huffman following his unauthorized departure from the Lebanon Correctional Institution. A jury trial was held on September 14, 2006, at the conclusion of which appellant was found guilty and sentenced to one year in prison. Appellant now appeals her conviction, advancing one assignment of error.
 {¶ 6} Assignment of Error No. 1: *Page 3 
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DENIED THE MOTION FOR JUDGMENT OF ACQUITTAL THAT WAS MADE AT THE CLOSE OF THE STATE'S CASE IN CHIEF AND RENEWED AT THE CLOSE OF ALL THE EVIDENCE."
 {¶ 8} In her sole assignment of error, appellant advances three arguments in support of her contention that the trial court erred in denying her Crim.R. 29 motion for acquittal. First, appellant argues insufficient evidence was presented at trial to support her conviction for complicity to escape, where the evidence indicated appellant rendered assistance to Huffman after he left prison grounds and after an immediate pursuit of Huffman had ended. Second, appellant argues venue did not lie in Warren County for the charged offense because none of her actions in assisting Huffman occurred in Warren County. Finally, appellant argues insufficient evidence was presented to support her conviction because there was no in-court identification of her at trial. We find each of appellant's arguments without merit.
 {¶ 9} Pursuant to Crim.R. 29, a court shall not enter a judgment of acquittal unless "the evidence is insufficient to sustain a conviction of [the] offense * * *" A sufficiency of the evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52.
 {¶ 10} In reviewing the sufficiency of the evidence to support a criminal conviction, the reviewing court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355. In considering the *Page 4 
sufficiency of the evidence, a reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. See, also, State v. White, Franklin App. No. 06AP-607, 2007-Ohio-3217, ¶ 26.
 {¶ 11} We first address appellant's argument that the state failed to produce sufficient evidence to prove she aided and abetted Huffman in committing escape. Appellant contends the evidence presented at trial does not support a finding that she aided and abetted Huffman's escape because Huffman had completed the crime before appellant came into contact with him on the evening in question. We disagree.
 {¶ 12} Pursuant to R.C. 2923.03(A)(2), "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * *." Ohio courts have consistently defined the term "aid and abet" to mean to assist, incite or encourage. State v. Wolfe (Dec. 11, 2000), Madison App. No. CA99-11-029, at 35, citing Horstman v. Farris (1999),132 Ohio App.3d 514, 527. "Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding and abetting of the act." Id., quoting State v. Stepp (1997),117 Ohio App.3d 561, 568.
 {¶ 13} Further, "[w]ithout previous connection with the transaction, one is not an aider and abettor unless he knowingly does something which he ought not to do, or omits to do something he ought to do, which assists or tends in some way to affect the doing of the thing which the law forbids; in order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object." Id. at 35-36, quoting Smith v. State (1931), 41 Ohio App. 64, 68. Significantly, this court has stated that "[a] person is not an aider and abettor where that *Page 5 
person's conduct, in relation to the offense, takes place wholly after the offense is committed." Id. at 36.[2]
 {¶ 14} Escape is codified under R.C. 2921.34(A)(1), which provides that "[n]o person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, * * *." R.C. 2921.01(E), in relevant part, defines "detention" as "* * *; confinement in any public * * * facility for custody of persons charged with or convicted of crime * * *."
 {¶ 15} The Ohio General Assembly has not explicitly defined escape as a continuing offense, or as complete at any particular point in time. In addition, neither the Ohio Supreme Court nor any Ohio appellate district appears to have addressed this issue, though courts have interpreted the term "detention" to determine under what circumstances an escape occurs. See, e.g., State v. Shook (1975), 45 Ohio App.2d 32, 34-35. These cases are instructive to our analysis of whether escape is a continuing offense or at what point in time the offense is completed.
 {¶ 16} In State v. Smith (1985), 29 Ohio App.3d 194, paragraph one of the syllabus, for instance, the Eighth District Court of Appeals held that "[t]he breaking of detention as prohibited by R.C. 2921.34(A) is the termination of the status of being in legal custody, either with or without the use of force, and when it is done purposely the offense of escape has been committed." In applying this definition to the facts of the case, the court held that a *Page 6 
juvenile who had been ordered to reside in a group home following her adjudication as delinquent, was being "detained" such that she could be charged with escape when she left the premises without permission. Id. at 195.
 {¶ 17} Similarly, other Ohio courts have made clear that a detainee need not break physical restraint to violate R.C. 2921.34. In State v.Shook, the Third District Court of Appeals explained that "[t]he word `detention' * * * is an abstract term which signifies, not the place or means of confinement, but a status. It constitutes the state of being held in some form of legal custody. * * * The word `break' as used in the statute means only the termination of being in legal custody, either with or without the use of force, and when it is done purposely, the crime proscribed by the statute is committed. * * * The crime however,is not in breaking out of the facility but in willfully terminating thestatus of being detained therein." Shook, 45 Ohio App.2d at 34-35. (Emphasis added).
 {¶ 18} However, the United States District Court for the Sixth Circuit has recently addressed escape pursuant to Kentucky law, concluding that the offense is a continuing offense. See United States v. Lancaster
(C.A.6, Aug. 31, 2007), F.3d, 2007 WL 2457448. Like Ohio's escape statute, the Kentucky statute at issue in Lancaster has not been construed by Kentucky's highest state court as complete once a prisoner impermissibly leaves custody. Id. at *6. In reaching its conclusion, the court examined the law of escape in various other jurisdictions, noting the majority rule is that "the crime of escape is considered a continuing offense." Id.[3] *Page 7 
 {¶ 19} The United States Supreme Court has also concluded that escape pursuant to federal law is a continuing offense. See United States v.Bailey (1980), 444 U.S. 394, 413, 100 S.Ct. 624. In Bailey, the court stated, "we think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense * * *. Given the continuing threat to society posed by an escaped prisoner, `the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" Id., quoting Toussie v. UnitedStates (1970), 397 U.S. 112, 115, 90 S.Ct. 858.
 {¶ 20} Other federal and state courts, however, have found the United States Supreme Court's holding in Bailey inapplicable to cases in which a defendant is charged with aiding and abetting escape by rendering aid to an escapee after he has left custody. Such cases have reasoned that laws proscribing harboring a fugitive would be rendered meaningless if escape were to be considered a continuing offense, and therefore, have attempted to limit escape to a specific time frame such as while an escapee is under "immediate pursuit" or has not reached "temporary safety." See, e.g., United State v. Smithers (C.A.5, 1994), 27 F.3d 142,144-145; Orth v. United States (C.A.4, 1918), 252 F. 566, 568;United States v. DeStefano (C.A.1, 1995), 59 F.3d 1, 4-5; United Statesv. Vowiell (C.A.9, 1989), 869 F.2d 1264, 1269; Stull, 112 Nev. at 22.
 {¶ 21} After examining the law of escape under federal law, Ohio law and that of other states, we find that these cases must be resolved on a case by case basis based on the facts. At least so long as an escapee is initially evading recapture, those who knowingly assist said escapee may be charged with aiding and abetting the escape. Accordingly, we find appellant was properly charged with aiding and abetting Huffman's escape based upon her actions in assisting Huffman by furnishing him with a previously purchased change of clothes following his departure from prison grounds. It is reasonable to infer from this fact that she was aware he intended to escape service of the remaining 18 months of his prison term. Moreover, after *Page 8 
reviewing the record, we find sufficient evidence was presented at trial to support a finding that appellant's continuing actions assisting Huffman upon meeting up with him on the night in question aided and abetted his escape.
 {¶ 22} The record indicates that prison officials became aware of Huffman's absence from the prison farm at approximately 6:30 p.m. Ohio State Highway Patrol investigators were contacted shortly thereafter, at approximately 7:15 p.m., and immediately began pursuing Huffman by investigating locations in Kentucky where Huffman might have gone. Appellant indicated in a statement to authorities that she met up with Huffman at approximately 8:00 p.m.
 {¶ 23} The record also indicates that upon meeting Huffman at an agreed-upon location in Covington, Kentucky, appellant transported Huffman to Sweet's apartment, where she provided him with a change of clothes. Appellant had previously purchased these clothes for Huffman while he was incarcerated. In addition, the record indicates appellant allowed Huffman to use her cellular telephone to contact family members and friends, and provided him with transportation to various other locations in Kentucky. The evidence presented at trial demonstrates that such actions occurred less than two hours after Huffman was found to be missing from the prison farm and while law enforcement officials were actively pursuing him.
 {¶ 24} After being apprehended, appellant admitted to authorities that she knew Huffman had 18 months remaining on his prison sentence at the time she came into contact with him on the evening in question, and should have known his departure from prison was unauthorized. In addition, the evidence presented at trial indicates that Sweet called appellant on the morning following Huffman's escape to inform appellant that she had seen on the news that Huffman had "broken out of prison." Nevertheless, the record indicates that appellant continued to allow Huffman to use her cellular telephone to contact family members, and accompanied Huffman to his sister's home in Kentucky, where the two were eventually *Page 9 
apprehended by authorities.
 {¶ 25} Appellant does not dispute the jury's fact finding that her actions on the night in question assisted Huffman in avoiding recapture, nor does she dispute the jury's fact finding that she knew or should have known he had escaped from prison at that time. After a careful review of the record, we find the state produced sufficient evidence as to each of the elements of complicity to escape, such that a reasonable trier of fact could conclude that appellant was guilty of the offense beyond a reasonable doubt.
 {¶ 26} Based upon our resolution of appellant's first argument, we likewise find appellant's second argument concerning venue to be without merit. Appellant argues venue was improper in Warren County because none of her actions in assisting Huffman occurred in Warren County. R.C.2901.12(A) provides, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." For venue to be proper, there must be a "significant nexus" between one or more of the elements of an offense and the county in which the charge is brought. State v. Draggo (1981), 65 Ohio St.2d 88,92. With respect to complicity, R.C. 2923.03(F) provides that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 27} Here, appellant was charged with complicity to escape pursuant to R.C. 2923.03(A)(2) and R.C. 2921.34(A)(1). Accordingly, the state was required to prove appellant aided and abetted Huffman in the commission of escape, which necessarily required the state to prove an escape occurred. It is undisputed that Huffman escaped from Lebanon Correctional Institution, located in Warren County, Ohio. Moreover, as we have previously found, appellant's actions on the night in question, including providing him with transportation, *Page 10 
a change of clothes and a cellular telephone, assisted Huffman in committing escape, as he avoided recapture.
 {¶ 28} Accordingly, we find a significant nexus exists between one or more elements of appellant's complicity to escape charge and Warren County. We therefore find that venue was proper in Warren County.
 {¶ 29} Finally, we reject appellant's third argument that the state failed to prove appellant's identity beyond a reasonable doubt. The state has a duty to present evidence, beyond a reasonable doubt, as to each and every element of the crime as set forth in the indictment. SeeState v. Kline, Warren App. No. CA2004-10-125, 2005-Ohio-4336, ¶ 5. Besides proof of each element of an offense, the state must also demonstrate the identity of the defendant as the perpetrator beyond a reasonable doubt. State v. Cook (1992), 65 Ohio St.3d 516, 526.
 {¶ 30} Ohio courts have "long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt," as circumstantial evidence is accorded equal weight and given the same deference as direct evidence. State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-6046, ¶ 75, quoting State v. Heinish (1990),50 Ohio St.3d 231, 238. Moreover, Ohio courts have specifically held that the identity of a defendant as the perpetrator of the crime in question may be proven by indirect evidence. See, e.g., State v. Baxla (June 13, 1988), Highland App. No. 656, at *3. For instance, witness testimony referring to the "defendant," coupled with a demonstration that "the person committing the offense was arrested and charged and the defendant appeared at trial in response to the charge," has been found to "constitute sufficient evidence of identification to withstand [a] Crim.R. 29(A) motion for judgment of acquittal." Id. at *3, *4.
 {¶ 31} Here, the record indicates that appellant was present at trial as Shirley Brown *Page 11 
and that the evidence presented at trial referred to appellant as Shirley Brown throughout its entirety. For instance, Trooper Wynn Blybeog testified regarding telephone calls made to and from "Shirley Brown's" cellular telephone, which authorities were monitoring on the night in question after having received an anonymous tip that appellant had met up with Huffman. While testifying as to such calls, Trooper Blybeog indicated that he had an "opportunity to speak with the defendant after she was apprehended in Kentucky," during which she explained to him one of the calls made from that telephone. Notably, Trooper Blybeog's interview was recorded and played at trial, after which Trooper Blybeog confirmed that the recording fairly and accurately represented his conversation with "Shirley Brown."
 {¶ 32} Appellant's sister, Bonnie Blevins, also testified during appellant's trial regarding the night in question. She indicated that "Shirley Brown" was her sister, and responded to questions regarding her sister's actions on the night in question and in the following days. She testified that on the Saturday following Huffman's initial escape, her sister was crying and told her that she had seen Huffman's picture on television but that "she didn't do anything."
 {¶ 33} Similarly, appellant's close friend, Krista Sweet, also testified at trial, responding to questions referring to "Shirley Brown" and her interaction with Huffman on the night in question. Sweet testified that Huffman originally called her that night trying to reach "Shirley." Sweet testified that she put Huffman in contact with "Shirley" and thereafter allowed the two of them to come to her apartment. She also testified that she called "Ms. Brown" the next morning, and told her that she had seen on the news that Huffman had broken out of prison. Sweet indicated that appellant was very upset at the time and did not know what to do.
 {¶ 34} We find the foregoing circumstantial evidence, if believed, was sufficient to support a finding that appellant was the individual who committed the offense in question, beyond a reasonable doubt. Accordingly, we find appellant's argument as to this issue without merit. *Page 12 
 {¶ 35} Based upon the foregoing, we find the trial court did not err in denying appellant's Crim.R. 29 motion, as sufficient evidence was presented at trial to support a finding that appellant was guilty of complicity to escape beyond a reasonable doubt. Appellant's sole assignment of error is therefore overruled.
 {¶ 36} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar for purposes of issuing this opinion.
[2] Where there is "any prior association," however, "a person's participation in the criminal intent may be inferred from their presence, companionship, and conduct both before and after the offense is committed, as shown through either direct or circumstantial evidence." Wolfe, at 36. See, also, State v. Jackson, Franklin App. No. 03AP-273, 2003-Ohio-5946, ¶ 32; State v. Cartellone (1981),3 Ohio App.3d 145, 150; State v. Pruett (1971), 28 Ohio App.2d 29, 34. In addition, "aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout."Jackson, quoting Cartellone. See, also, State v. Trocodaro (1973),36 Ohio App.2d 1, 6 ("One may be found to be an aider and abettor in the commission of a crime even though he was not actually present at the time the crime was committed; such presence may take the form of constructive presence. Examples of such are drivers of vehicles used in perpetrating crimes[;] lookouts during the commission of crimes; and persons who set up schemes for obtaining entry by others into premises which are sites for criminal acts." (Internal citations omitted.)).
[3] The court cited the following cases in summarizing the majority view: Harbin v. State (Ala.App. 1991), 581 So.2d 1263, 1266; Lacey v.State (Alaska App. 2002), 54 P.3d 304, 307; McCoy v. State (Del. 1988), 542 A.2d 1215; Colo.Rev.Stat 18-8-201(2) ("`Escape' is deemed to be a continuing activity commencing with the conception of the design to escape and continuing until the escapee is returned to custody or the attempt to escape is thwarted or abandoned."); People v. Miller (1987),157 Ill.App.3d 43, 46; State v. Francois (Iowa 1998), 577 N.W.2d 417,420; State v. Burnett (1972), 292 Minn. 484; State v. Jones
(Mo.App. 1977), 556 S.W.2d 736, 738; State v. Stull (1996), 112 Nev. 18,22; State v. Martinez (1989), 109 N.M. 34, 37; State v. White (1974), 21 N.C.App. 173, 177; State v. Campbell (Nov. 21, 2006), Tenn.App. No. E2005-01849, at *23-24; State v. Lewis (1998), 167 Vt. 533, 536;Parent v. State (1966), 31 Wis.2d 106, 109-110. *Page 1