[Cite as *State v. Khalfani*, 2023-Ohio-1963.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

OSIRIS KHALFANI

    Appellant

C.A. No.     30330

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 21 03 0845

DECISION AND JOURNAL ENTRY

Dated: June 14, 2023

STEVENSON, Judge.

{¶1} Appellant, Osiris Khalfani, appeals from the judgment of the Summit County Common Pleas Court. For the reasons set forth below, we affirm.

I

{¶2} On February 24, 2021, at 2:29 p.m., A.B. was shot 11 times in his driveway at 1056 Vernon Odom Boulevard in Akron, Ohio, and died as a result. Several police officers responded to the scene. Upon arrival, they found A.B. lying in the driveway unresponsive near a red Ford Focus with the passenger door open. While some of the officers checked the house, another officer proceeded to the backyard where he observed footprints in the snow leading both to and from A.B.'s residence towards Galat Way, a dead-end street next to the woods behind A.B.'s home.

{¶3} The police obtained surveillance videos from several neighboring residences. The video footage showed that a man was first seen exiting a gray Dodge Charger on Galat Way. The

man was wearing a white mask, black jogging pants with a white stripe down the pant leg, and a pair of tennis shoes. The Dodge Charger was left running. The man walked towards the wooded area behind A.B.'s home, approached A.B. while brandishing a firearm in his right hand, then fired the gun, murdering A.B. in his driveway.

{¶4} The video footage also showed that just prior to the gunman approaching him, A.B. was sitting on the passenger side of the red Ford Focus, then exited holding his cell phone in his hand. The gunman fled through the backyard into the woods toward the Dodge Charger parked at Galat Way. That sequence lasted four minutes and ten seconds. Prior to leaving the scene, the gunman briefly returned to the woods behind A.B.'s home where it appeared that he was looking around on the ground for a lost item. He then returned to the Dodge Charger and drove away.

{¶5} During their investigation of the scene, the Akron police officers found a Dodge key fob that was attached to a clear plastic holder containing a Visa debit card in the wooded area near where the Dodge Charger had been parked. The name "Osiris Khalfani" was printed on the debit card. Based on that information, the police learned that the Dodge Charger was registered to Mr. Khalfani, and through a license plate reader system, discovered that it was parked at Mr. Khalfani's apartment in Columbus, Ohio. According to one of the police officers, regarding vehicles that operate with a key fob, if the vehicle is not turned off, it can be driven without the key fob in the vehicle.

{¶6} The next day, officers from the Fugitive Task Force went to Mr. Khalfani's residence in Columbus where they found Mr. Khalfani and his girlfriend. Mr. Khalfani voluntarily consented to a search of his apartment and vehicle. During the search, the officers found a pair of pants and shoes matching those worn by the gunman in Mr. Khalfani's trash can. The pattern

on the bottom of the shoes in Mr. Khalfani's trash matched the tracks left by the soles of the shoes in the video footage.   In addition, they found $9,700.00 in cash in a popcorn tin.

{¶7}   Mr. Khalfani denied that the pants and shoes belonged to him.  He claimed they had been left in his car by an acquaintance who borrowed it the day before.  He acknowledged owning a pair of shoes just like the pair found in the trash but a different size.  He also said the $9,700.00 in cash was from his girlfriend's college scholarship refund and his unemployment checks.  The key fob that was found in the wooded area operated Mr. Khalfani's vehicle.  The gun was never recovered.  Mr. Khalfani was arrested and charged with murder.

{¶8}   Mr. Khalfani was indicted by the Summit County Grand Jury on one count of aggravated murder with a firearm specification.  He pleaded not guilty and waived his right to a jury trial.  Mr. Khalfani was convicted in a bench trial.

{¶9}   The State's evidence included data recovered from Mr. Khalfani's cell phone.  On February 23, 2021, the day before the murder, Mr. Khalfani's phone records show internet searches asking, "how late can you be on a car payment before repo" and "how late can you be on your rent."   The phone records also reflect that on the date of the murder, Mr. Khalfani received a call while in Columbus at 11:08 a.m., then travelled to Akron.  At 1:46 p.m. he placed a phone call while in Akron.  At 2:27:19, an incoming call from Mr. Khalfani's girlfriend went unanswered. At 2:31:38 he placed an outgoing call to his girlfriend. Cell phone towers placed Mr. Khalfani's phone in Akron near Vernon Odom Boulevard in the afternoon.  He was in Akron as late as 3:36 pm and back in Columbus by 5:13 pm.

{¶10} The State also presented evidence that  the Dodge Charger was registered to Mr. Khalfani on January 15, 2020, and  the color was listed as white. A receipt  was found inside the

vehicle showing that on December 28, 2020, it had been painted gray at Maaco Collision Repair and Auto Painting.

{¶11} During the processing of the vehicle, the State found a man-sized silhouette target from a shooting range in the trunk containing what appeared to be bullet holes. The State also found that Mr. Khalfani and his girlfriend had signed their names on a log sheet at a shooting range on December 21, 2020, and took some practice time. Mr. Khalfani's cell phone records contained a video of him taking target practice at the shooting range. In that video, he is wearing shoes matching the pair worn by the gunman on the surveillance video and the pair found in his apartment.

{¶12} A detective testified regarding the jail calls between Mr. Khalfani and his girlfriend while Mr. Khalfani was being held in the Summit County Jail. During one of the calls, they discussed the position and location of the surveillance cameras at the scene of the murder. Mr. Khalfani had asked his girlfriend to return to the scene and look for them. The following is an excerpt from that conversation:

Q: (Mr. Khalfani): Do you know where I was?

A: (Girlfriend): "Don't even say it. Don't even say it."

***

Q: (Girlfriend) Did you f *** ing see [the cameras]?

A: (Mr. Khalfani) No

Q: But you looked?

A: Not even, not really ***.

Q: Why didn't you?

A: I don't know.

Q: You wasn't thinking

A: Yeah

{¶13} Mr. Khalfani testified in his defense. He said he was unemployed at that time and his girlfriend was a college student, but that future rent payments would come from savings accumulated from his girlfriend's school scholarship money and his unemployment checks.

{¶14} Mr. Khalfani's version of the events in question is that he and his girlfriend came to Akron on February 24, 2021, for the purpose of visiting with family and obtaining money for his cousin. They planned to visit with friends in the afternoon, then have dinner with his parents in the evening. Upon arrival in Akron, he stopped by his parents' house and dropped off money for his dad, then dropped his girlfriend off at her cousin's house. He then picked up the money for his cousin at a house near Delia Avenue and proceeded to his friend C.H.'s house on Hardesty Blvd. Another acquaintance, known as "Meech," was also there. Mr. Khalfani did not know Meech's last name. The three of them smoked marijuana, drank, and "hung out" together to pass the time before dinner.

{¶15} Mr. Khalfani claims that Meech asked to borrow his car to go to the store but lost the key fob and the debit card that was attached. Since the vehicle would not start without the key fob, Mr. Khalfani changed his plans, picked up his girlfriend, and returned to Columbus while the car was still running.

{¶16} Mr. Khalfani acknowledged what was reflected in the phone records: that between 4:59 pm and 6:44 pm he searched on his cell phone for locations in Columbus where he could get a new key fob. He also created a video while in his vehicle showing that the dashboard reflected the key fob was missing from the car. The video depicted Mr. Khalfani holding a bundle of cash next to his face.

**{¶17}** The trial court found Mr. Khalfani guilty. He was sentenced to an indefinite term of life imprisonment with parole eligibility after 25 years on count one, and a mandatory term of three years on the firearm specification to be served first and consecutive to the 25 years.

**{¶18}** Mr. Khalfani timely appeals and raises one assignment of error for our review.

## ASSIGNMENT OF ERROR I

**THE CONVICTION OF APPELLANT FOR AGGRAVATED MURDER AND THE SPECIFICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD THEREFORE BE OVERTURNED**

**{¶19}** Mr. Khalfani argues that his conviction is against the manifest weight of the evidence. The crux of his argument is that the evidence presented at trial was circumstantial and that the trial court drew impermissible inferences from that evidence. He argues that the greater weight of the evidence does not support his conviction. This Court disagrees.

**{¶20}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

**{¶21}** "Circumstantial and direct evidence inherently possess the same probative value." *State v. Smith,* 9th Dist. Lorain No. 99CA007399, 2000 WL 1675052 (Nov. 8, 2000), *6, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. Furthermore, it is well-settled that "[T]he identity of a perpetrator may be established using direct or circumstantial evidence." *State v. Liggins*, 9th Dist. Summit No. 24220, 2009-Ohio-1764, ¶ 11, quoting *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. Circumstantial evidence alone can be used to establish the identity of a perpetrator. *See State v. Murray*, 7th Dist. Mahoning No. 07 MA 21, 2008-Ohio-1537, ¶ 11; *State v. Brown*, 12th Dist. Warren No. CA2006-10-120, 2007-Ohio-5787, ¶ 34.

**{¶22}** Mr. Khalfani argues that there were many unexplained or peculiar facts and circumstances presented at trial that provided sufficient reasonable doubt that he was the gunman. He further alleges that no clear motive was ever established nor was there any evidence that the murder of A.B. was a planned killing as the State contends. Mr. Khalfani claims that from the State's evidence, the murder is merely a senseless and random act of violence.

**{¶23}** First, Mr. Khalfani argues that the discovery of his personal property at the crime scene does not prove that he committed the murder. He also argues this personal property evidence does not override the evidence missing from the record, including the gun and any gunshot residue, DNA, or fingerprint testing linking him to the murder scene.

**{¶24}** Likewise, he claims the inferences made from the evidence do not support his conviction. He argues that while the clothes found in his apartment were similar to those seen on the video surveillance, there is nothing directly linking those items to him, i.e., no testimony of the size of the sweat/jogging suit that would fit him, and the fact that the shoes were allegedly not his size. From the cell phone tower records, Mr. Khalfani maintains that the State did not prove

he was in the precise area of 1056 Vernon Odom Boulevard when the shooting occurred, only the general area of west Akron.

{¶25} Mr. Khalfani further complains that while the State characterized the murder as a contract killing based solely on the large amount of cash found in Mr. Khalfani's apartment, the State did not establish that the money was linked to the murder of A.B. He contends that was a conclusion based on facts not in evidence.

{¶26} Mr. Khalfani theorizes that a contract killer would never quickly consent to a search of his home when inculpatory evidence was inside, and therefore, since he had nothing to hide, he did not commit the murder. Secondly, he questions why a contract killer would be so careless as to lose his key fob and attached debit card, and if he did, would have done whatever was necessary to find it to avoid being identified. Third, he asks why a contract killer would stay on the same side of town for over an hour before returning home. Finally, he posits that if this had been a murder for hire, he would have called his benefactor after the fact to report it so that he could collect his reward.

{¶27} Lastly, Mr. Khalfani contends that another fact that created reasonable doubt is the victim's behavior when the gunman approaches. A.B. is clearly talking on his cell phone as he exits the vehicle. Yet, in Mr. Khalfani's opinion, A.B. makes no furtive gesture of surprise or avoidance when the gunman approaches, as if he knows the person and is anticipating a friendly conversation. Mr. Khalfani suggests that since he and A.B. did not know each other, A.B.'s reaction would have been vastly different.

{¶28} Mr. Khalfani's arguments focus on what he characterizes as missing evidence and other reasonable inferences that could be drawn from the evidence that point away from him as the gunman. However, having reviewed the record and the arguments presented, this Court

concludes Mr. Khalfani has not shown that this is the exceptional case in which the evidence weighs heavily against his convictions. *See Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, at ¶ 26. The State set forth evidence from which the trier of fact could reasonably conclude that Mr. Khalfani, purposely, with prior calculation and design, caused the death of A.B. using a firearm.

{¶29} The State linked Mr. Khalfani to the key fob and debit card found at the scene and to the Dodge Charger shown in the surveillance video. The debit card belonged to Mr. Khalfani and the key fob operated his vehicle, which was the getaway car. The trier of fact was free to disbelieve Mr. Khalfani's assertion that he let a man whose last name he did not know borrow his car at the exact same time of the murder, and that he would allow this person to take his debit card when the plastic holder could easily be detached.

{¶30} The State also linked Mr. Khalfani to the clothing worn by the gunman. A pair of shoes and pants matching those worn by the gunman in the surveillance videos were found in his apartment the next day. The shoes Mr. Khalfani was wearing in the target practice video matched the shoes shown in the surveillance video from the murder scene and the pair found at his apartment. The trier of fact was free to disbelieve Mr. Khalfani's story that he had the same pair of shoes but a different size. No such pair of shoes were found by the police when they searched his apartment. The trial court was also free to doubt that the clothing found at his apartment did not belong to him and was left in the car when Meech returned it. That conclusion would have required the trial court to assume the unlikely fact that when Meech returned the car he had a change of clothes with him or stopped to change. The trial court would also have to believe that Meech left inculpatory evidence in plain view.

{¶31} Through cell phone records, the State placed Mr. Khalfani near the scene of the crime during the time frame of the murder, between 1:46 p.m. and 3:36 p.m. His phone records also show that no outgoing calls were made between the time the gunman exited from and returned to the Dodge Charger. As Mr. Khalfani was a Columbus resident, it was circumstantial that he happened to be in Akron near the area of murder during the time it occurred. The trial court was free to infer from those facts that Mr. Khalfani had the opportunity to commit the murder.

{¶32} The video extracted from Mr. Khalfani's cell phone that was taken on the trip from Akron back to Columbus showed him holding a large bundle of cash. The trial court was free to disbelieve Mr. Khalfani that this was the money he obtained for his cousin and that he was taking a video to brag about it. By his own admission, on the day prior to the murder of A.B., Mr. Khalfani had conducted searches on his cell phone from which the trier of fact could reasonably conclude that he was having financial problems and could not make his rent or car payment. From that, the trial court was free to infer that Mr. Khalfani had a motive. The trial court could have also reasonably inferred that Mr. Khalfani remained in Akron for over an hour after the murder because he was picking up the money from his benefactor, not because he was innocent and unconcerned about being apprehended.

{¶33} The trial court also heard testimony and viewed video evidence that Mr. Khalfani went to a target practice range in December 2020, just two months prior to the murder, and that a man-sized practice silhouette riddled with bullets was found in his car. Around that same time, he had his car painted. The trial court was free to conclude from that evidence that Mr. Khalfani was preparing for the murder of A.B., and thus, was engaged in a planned scheme.

{¶34} The trial court heard the jail calls between Mr. Khalfani and his girlfriend wherein they discussed the surveillance cameras. From those conversations, the trial court could have reasonably concluded that Mr. Khalfani was present at the scene, that he had been careless in forgetting to look for cameras, and that he was fearful of being caught on video.

{¶35} This Court has also viewed the video of the shooting. Upon seeing the gunman, A.B. is heard shouting "what the f***?" in a shocked and distressed manner. That statement is not indicative of someone anticipating a friendly conversation as Mr. Khalfani suggests.

{¶36} Wherefore, upon review of the evidence, this Court concludes that Mr. Khalfani has not shown that the trial court lost its way when it chose to believe the State's evidence and found him guilty of aggravated murder. The trial court, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence, and was free to believe the State's theory of the events leading to the death of A.B. and reject Mr. Khalfani's version *See State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Accordingly, this Court rejects Mr. Khalfani's argument that his conviction is against the manifest weight of the evidence.

{¶37} Mr. Khalfani's single assignment of error is overruled.

III

{¶38} The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.