[Cite as *State v. Khalfani*, 2024-Ohio-2049.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    30330 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| ORISIS KHALFANI | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 21 03 0845 |

DECISION AND JOURNAL ENTRY

Dated: May 29, 2024

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant, Osiris Khalfani, moved to reopen his appeal from the judgment of the Summit County Court of Common Pleas after this Court affirmed his conviction in *State v. Khalfani*, 9th Dist. Summit No. 30330, 2023-Ohio-1963 ("*Khalfani I*"). We granted the application to reopen, and this matter is now before us for decision. For the following reasons, we confirm our prior decision.

I.

{¶2} In *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997, this Court explained its obligations in a reopened appeal as follows:

Under Rule 26(B)(9) of the Ohio Rules of Appellate Procedure, "[i]f th[is] [C]ourt finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, [it] shall vacate its prior judgment and enter the appropriate judgment. If th[is][C]ourt does not so find, [it] shall issue an order confirming its prior judgment." Deficient performance by a lawyer is a performance that falls below an objective standard of reasonable representation. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶ 204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). A defendant is prejudiced by the deficiency if there

is a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. *Id*. (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

(Alterations sic.) *Id*. at ¶ 9. With those obligations in mind, we turn to the facts underlying the instant appeal.

{¶3}    This Court previously set forth the factual and procedural background of this case as follows:

On February 24, 2021, at 2:29 p.m., A.B. was shot 11 times in his driveway at 1056 Vernon Odom Boulevard in Akron, Ohio, and died as a result. Several police officers responded to the scene. Upon arrival, they found A.B. lying in the driveway unresponsive near a red Ford Focus with the passenger door open. While some of the officers checked the house, another officer proceeded to the backyard where he observed footprints in the snow leading both to and from A.B.'s residence towards Galat Way, a dead-end street next to the woods behind A.B.'s home.

The police obtained surveillance videos from several neighboring residences. The video footage showed that a man was first seen exiting a gray Dodge Charger on Galat Way. The man was wearing a white mask, black jogging pants with a white stripe down the pant leg, and a pair of tennis shoes. The Dodge Charger was left running. The man walked towards the wooded area behind A.B.'s home, approached A.B. while brandishing a firearm in his right hand, then fired the gun, murdering A.B. in his driveway.

The video footage also showed that just prior to the gunman approaching him, A.B. was sitting on the passenger side of the red Ford Focus, then exited holding his cell phone in his hand. The gunman fled through the backyard into the woods toward the Dodge Charger parked at Galat Way. That sequence lasted four minutes and ten seconds. Prior to leaving the scene, the gunman briefly returned to the woods behind A.B.'s home where it appeared that he was looking around on the ground for a lost item. He then returned to the Dodge Charger and drove away.

During their investigation of the scene, the Akron police officers found a Dodge key fob that was attached to a clear plastic holder containing a Visa debit card in the wooded area near where the Dodge Charger had been parked. The name "Osiris Khalfani" was printed on the debit card. Based on that information, the police learned that the Dodge Charger was registered to Mr. Khalfani, and through a license plate reader system, discovered that it was parked at Mr. Khalfani's apartment in Columbus, Ohio. According to one of the police officers, regarding vehicles that operate with a key fob, if the vehicle is not turned off, it can be driven without the key fob in the vehicle.

The next day, officers from the Fugitive Task Force went to Mr. Khalfani's residence in Columbus where they found Mr. Khalfani and his girlfriend. Mr. Khalfani voluntarily consented to a search of his apartment and vehicle. During the search, the officers found a pair of pants and shoes matching those worn by the gunman in Mr. Khalfani's trash can. The pattern on the bottom of the shoes in Mr. Khalfani's trash matched the tracks left by the soles of the shoes in the video footage. In addition, they found $9,700.00 in cash in a popcorn tin.

Mr. Khalfani denied that the pants and shoes belonged to him. He claimed they had been left in his car by an acquaintance who borrowed it the day before. He acknowledged owning a pair of shoes just like the pair found in the trash but a different size. He also said the $9,700.00 in cash was from his girlfriend's college scholarship refund and his unemployment checks. The key fob that was found in the wooded area operated Mr. Khalfani's vehicle. The gun was never recovered. Mr. Khalfani was arrested and charged with murder.

Mr. Khalfani was indicted by the Summit County Grand Jury on one count of aggravated murder with a firearm specification. He pleaded not guilty and waived his right to a jury trial. Mr. Khalfani was convicted in a bench trial.

The State's evidence included data recovered from Mr. Khalfani's cell phone. On February 23, 2021, the day before the murder, Mr. Khalfani's phone records show internet searches asking, "how late can you be on a car payment before repo" and "how late can you be on your rent." The phone records also reflect that on the date of the murder, Mr. Khalfani received a call while in Columbus at 11:08 a.m., then travelled to Akron. At 1:46 p.m. he placed a phone call while in Akron. At 2:27:19, an incoming call from Mr. Khalfani's girlfriend went unanswered. At 2:31:38 he placed an outgoing call to his girlfriend. Cell phone towers placed Mr. Khalfani's phone in Akron near Vernon Odom Boulevard in the afternoon. He was in Akron as late as 3:36 pm and back in Columbus by 5:13 pm.

The State also presented evidence that the Dodge Charger was registered to Mr. Khalfani on January 15, 2020, and the color was listed as white. A receipt was found inside the vehicle showing that on December 28, 2020, it had been painted gray at Maaco Collision Repair and Auto Painting.

During the processing of the vehicle, the State found a man-sized silhouette target from a shooting range in the trunk containing what appeared to be bullet holes. The State also found that Mr. Khalfani and his girlfriend had signed their names on a log sheet at a shooting range on December 21, 2020, and took some practice time. Mr. Khalfani's cell phone records contained a video of him taking target practice at the shooting range. In that video, he is wearing shoes matching the pair worn by the gunman on the surveillance video and the pair found in his apartment.

A detective testified regarding the jail calls between Mr. Khalfani and his girlfriend while Mr. Khalfani was being held in the Summit County Jail. During one of the calls, they discussed the position and location of the surveillance cameras at the

scene of the murder. Mr. Khalfani had asked his girlfriend to return to the scene and look for them. The following is an excerpt from that conversation:

Q: (Mr. Khalfani): Do you know where I was?

A: (Girlfriend): "Don't even say it. Don't even say it."

***

Q: (Girlfriend) Did you f *** ing see [the cameras]?

A: (Mr. Khalfani) No

Q: But you looked?

A: Not even, not really ***.

Q: Why didn't you?

A: I don't know.

Q: You wasn't thinking

A: Yeah

Mr. Khalfani testified in his defense. He said he was unemployed at that time and his girlfriend was a college student, but that future rent payments would come from savings accumulated from his girlfriend's school scholarship money and his unemployment checks.

Mr. Khalfani's version of the events in question is that he and his girlfriend came to Akron on February 24, 2021, for the purpose of visiting with family and obtaining money for his cousin. They planned to visit with friends in the afternoon, then have dinner with his parents in the evening. Upon arrival in Akron, he stopped by his parents' house and dropped off money for his dad, then dropped his girlfriend off at her cousin's house. He then picked up the money for his cousin at a house near Delia Avenue and proceeded to his friend C.H.'s house on Hardesty Blvd. Another acquaintance, known as "Meech," was also there. Mr. Khalfani did not know Meech's last name. The three of them smoked marijuana, drank, and "hung out" together to pass the time before dinner.

Mr. Khalfani claims that Meech asked to borrow his car to go to the store but lost the key fob and the debit card that was attached. Since the vehicle would not start without the key fob, Mr. Khalfani changed his plans, picked up his girlfriend, and returned to Columbus while the car was still running.

Mr. Khalfani acknowledged what was reflected in the phone records: that between 4:59 pm and 6:44 pm he searched on his cell phone for locations in Columbus where

he could get a new key fob. He also created a video while in his vehicle showing that the dashboard reflected the key fob was missing from the car. The video depicted Mr. Khalfani holding a bundle of cash next to his face.

The trial court found Mr. Khalfani guilty. He was sentenced to an indefinite term of life imprisonment with parole eligibility after 25 years on count one, and a mandatory term of three years on the firearm specification to be served first and consecutive to the 25 years.

*Khalfani I* at ¶ 2-17.

**{¶4}** In his direct appeal, Mr. Khalfani raised one assignment of error, asserting that his conviction for aggravated murder with a firearm specification was against the manifest weight of the evidence. This Court overruled his assignment of error and affirmed his conviction. *Id*. at ¶ 37-38.

**{¶5}** Mr. Khalfani then filed an application to reopen his direct appeal, arguing that he received ineffective assistance of counsel because his counsel failed to assign as error that: (1) his conviction was not supported by sufficient evidence; (2) the State's use of his post arrest silence and failure to present witnesses to support his testimony violated his constitutional right to remain silent under *Miranda* and improperly placed the burden of proof on him in violation of R.C. 2901.05(A); (3) the trial court judge's bias deprived him of his right to due process; and (4) the indictment did not include a forfeiture specification under R.C. 2941.1417 as required by R.C. 2981.04(A)(1), and therefore, the forfeiture of his cell phone, vehicle, and $9,700 in cash was illegal.

**{¶6}** This Court granted Mr. Khalfani's application to reopen and appointed new counsel. In his reopened appeal, Mr. Khalfani now raises six assignments of error for our review. Mr. Khalfani has addressed his claim that his prior appellate counsel was deficient and that he was prejudiced by that deficiency pursuant to App.R. 26(B)(7).

## ASSIGNMENT OF ERROR ONE

**OSIRIS'S CONVICTIONS WERE NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW[.]**

{¶7}    Mr. Khalfani was found guilty of aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A).  R.C. 2903.01(A) prohibits aggravated murder and provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *."

{¶8}    The Supreme Court of Ohio has stated that "it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." *State v. Taylor*, 78 Ohio St.3d 15, 20 (1997).  However, three factors are important in determining whether prior calculation and design exists: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events?'" *Id*. at 19.

{¶9}    "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390. For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *Id*. at 273. The evidence is sufficient if it allows the trier of fact to

reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶10} In this assignment of error, Mr. Khalfani argues that his conviction was not supported by sufficient evidence. He denies that he was the perpetrator and alleges there was no evidence of prior calculation and design. Specifically, he maintains there was no evidence that he and the victim knew each other or that there was any advance thought to the scene of the crime or weapon. We disagree with Mr. Khalfani.

{¶11} In *State v. Jones,* 166 Ohio St.3d 85, 2021-Ohio-3311, ¶ 2, the Supreme Court of Ohio instructed that, "[i]n reviewing whether evidence is sufficient to establish the prior-calculation-and-design element of aggravated murder, a court must consider whether the evidence, when viewed in the light most favorable to the prosecution, supports a finding that [the] defendant acted with advance reasoning and purpose to kill."

{¶12} The surveillance video footage presented by the State showed that on February 24, 2021, a man wearing a black and white jogging suit with a white stripe on the pants exited a gray Dodge Charger that was parked on a dead-end street called Galat Way, then walked towards the wooded area behind the victim's home located on Vernon Odom Boulevard. The man approached the victim from the left side of his back yard, brandishing a firearm in his right hand, then fired the gun 11 times. The gunman fled through the backyard back towards Galat Way, but then returned, walked around the wooded area looking for something, then went back to the Dodge Charger and drove away.

{¶13} In the wooded area behind the victim's home, the police discovered footprints in the snow leading both to the victim's home and away from the home towards Galat Way. In that same area along the path marked by the footprints, the police also found a Dodge key fob attached

to a clear plastic holder containing a Visa debit card with the name "Osiris Khalfani." When later tested, the key fob operated Mr. Khalfani's vehicle.

**{¶14}** Mr. Khalfani's testimony at trial was that that his Dodge Charger would operate without the key fob provided it was not turned off. The video he took on his cell phone showed that he drove from Akron to Columbus without the key fob in the car shortly after the time of the murder. The next day, when the police arrived at Mr. Khalfani's apartment, they found shoes and black sweatpants with a solid white stripe consistent with those worn by the shooter.

**{¶15}** The evidence also showed that Mr. Khalfani's vehicle registration for the Dodge Charger, dated January 2020, listed the color as white. However, a receipt found inside the vehicle showed that it had been painted in December 2020. Mr. Khalfani's cell phone records contained a video of him taking target practice in December 2020 at a shooting range, and in that video, he was wearing shoes matching the pair worn by the gunman on the surveillance video and the pair found in his apartment. A man-sized silhouette target from a shooting range was found by the police in Mr. Khalfani's vehicle during processing after his arrest.

**{¶16}** Viewing this evidence in a light most favorable to the State, we conclude that the State produced sufficient evidence that Mr. Khalfani was the perpetrator and that he "conceive[d] and execute[d] a plan" to kill the victim by ambush. *See Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, at ¶ 26. Therefore, this evidence could lead the trier of fact to reasonably conclude beyond a reasonable doubt that Mr. Khalfani acted "with advance reasoning and purpose to kill[,]" and thus, with prior calculation and design. *Id*. at ¶ 2; *Jenks*, 61 Ohio St.3d at 273. Mr. Khalfani's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

**OSIRIS'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]**

{¶17} In his second assignment of error, Mr. Khalfani argues that his conviction is against the manifest weight of the evidence. Specifically, he argues that the State failed to meet its burden of production because certain evidence was absent from his trial: the firearm used in the killing; any tests of gunshot residue; a DNA match from any evidence found at the crime scene; no fingerprint evidence placing him at the scene; and a link between the clothes and shoes found at Mr. Khalfani's residence and those worn by the killer. He also argues that the cell phone data was inconclusive and did not show he was at the location of the murder at the time it took place. For the reasons that follow, this assignment of error is not properly the subject of our review under App.R. 26(B) and will not be addressed.

{¶18} Pursuant to App.R. 26(B)(2)(c), an application for reopening must contain "assignments of error not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation." Thus, appeals reopened under App.R. 26(B)(2) are intended to address assignments of error that were either not made or not properly considered in a previous appeal because of appellate counsel's ineffectiveness.

{¶19} Here, Mr. Khalfani's arguments are verbatim the same arguments he raised and that were addressed by this Court in *Khafani I*. He makes no allegation that those arguments were considered on an incomplete record. He does not argue either here or in his sixth assignment of error, which specifically addresses his claim of ineffective assistance of appellate counsel, that appellate counsel was ineffective in the manner that he raised manifest weight of the evidence in his direct appeal. Therefore, Mr. Khalfani's argument under this assignment of error falls outside the scope of our review under App.R. 26(B)(2) and will not be considered. Accordingly, Mr. Khalfani's second assignment of error is overruled.

**ASSIGNMENT OF ERROR THREE**

**THE TRIAL COURT ERRED BY PERMITTING THE GOVERNMENT TO USE OSIRIS'S POST-ARREST SILENCE[.]**

**{¶20}** Here, Mr. Khalfani argues that the State made impermissible references to his post-arrest silence during his testimony, and as such, his due process rights were violated, necessitating a reversal of his conviction and a new trial. We disagree.

**{¶21}** In support of his argument, Mr. Khalfani points to the following colloquy that took place at trial:

Q: [PROSECUTOR] And then the next day, after you were searching [on your phone] about how late you can be on your rent and your car payment, you're making a video in your car of yourself flashing cash, and what they found in your apartment was $9,757?

A: [MR. KHALFANI] That's correct.

Q: And you can account for that with unemployment checks and refunds?

A: Yes.

Q: And you had a year and a month, almost two months, to provide documentation of any of that to your attorney or to the police, and you have never done that?

A: I believe you guys have the paperwork for the refund check. I did turn it in. I believe [my girlfriend] turned it in to detective Morris.

Q: You have the opportunity -- when you talked with Detective Meech, and I understand you invoked your right to remain silent when Detective Morris wanted to talk to you, but when you talked to Detective Meech –

[DEFENSE COUNSEL]: Objection as far as the comment about his rights.

[PROSECUTOR]: Well, he already testified about what he said to the police, and he waived his right to remain silent today. I'm reaffirming the right.

[THE COURT]: What's your objection, [defense counsel]?

[DEFENSE COUNSEL]: I guess we don't have a jury, but improper commenting on a defendant exercising his Fifth Amendment right.

[THE COURT]: Well, why don't you repeat the question.

Q: [PROSECUTOR]: I'm sorry. You did speak to Detective Meech when he came to your house?

A: [MR. KHALFANI] Yes.

Q: You told him that you were unemployed. You didn't tell him that you were saving up money. You didn't tell him that you had big unemployment checks. You had no explanation for the cash they found that day.

A: I was actually taken out of the house before they found the cash.

Q: But you told him you were unemployed.

A: I don't recall saying that.

**{¶22}** In *State v. Harris*, 9th Dist. Lorain No. 11CA009991, 2012-Ohio-2973, ¶ 5-6, this Court stated the following on this subject:

> The right of an accused to remain silent, enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966), carries with it an implicit assurance that his silence will not be used against him. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). The *Doyle* court held that the use, for purposes of impeachment, of an accused's silence at the time of arrest after receiving *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.* at 619. In recognition of the fundamental unfairness associated with breaching the implied promise of the *Miranda* warnings, the United States Supreme Court later expanded its prior holding to prohibit the use of an accused's silence at trial as substantive evidence of guilt. *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986).

> [T]he Ohio Supreme Court has held that "[t]he privilege against self-incrimination guarantees to the individual the right to remain silent, unless he chooses to speak in the unfettered exercise of his will 'during a period of custodial interrogation as well as in the courts or during the course of other official investigation.'" *State v. Stephens*, 24 Ohio St.2d 76 (1970), paragraph one of the syllabus, following *Miranda*, supra.

**{¶23}** We agree with the State that in this line of questioning, it was not commenting on Mr. Khalfani's post-arrest silence, but rather, was simply cross-examining Mr. Khalfani on his statements to the police regarding the $9,757 found at his apartment when he was arrested and clarifying that the State was asking only about Mr. Khalfani's statements to Detective Meech. The State was merely attempting to contrast Mr. Khalfani's testimony with his statements to the police

about the cash, and was re-asserting that it was not expecting any testimony as to statements made to Detective Morris.

**{¶24}** Moreover, "[a] trial judge in a bench trial is presumed to know the law and to consider only the relevant, material, and competent evidence in arriving at a decision." *State v. Olah*, 146 Ohio App.3d 586, 2001-Ohio-1641, ¶ 26 (9th Dist.), citing *E. Cleveland v. Odetellah,* 91 Ohio App.3d 787, 794 (8th Dist.1993), and *State v. Davis*, 63 Ohio St.3d 44, 48 (1992). Mr. Khalfani does not call to our attention anything in the record that would overcome this presumption.

**{¶25}** Mr. Khalfani's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

## THE TRIAL COURT ERRED BY BEING BIASED TOWARD OSIRIS[.]

**{¶26}** Here, Mr. Khalfani argues that the trial court made sarcastic comments towards him when it stated, "[s]o your testimony today and what you want me to believe is that Meech, who was a friend of [C.H.'s], a friend of a friend, when you handed him the key fob you also handed him your bank card? That's what you want me to believe?" Mr. Khalfani alleges that this statement demonstrates that the trial court was biased against him, and that his trial was fundamentally unfair and denied him due process of law. We disagree.

**{¶27}** The record reflects that Mr. Khalfani's counsel did not object to the trial judge's comments during trial. Mr. Khalfani's failure to object at trial forfeits the issue on appeal except for plain error review. *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 35. "Under Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). However, Mr. Khalfani has not made a plain error argument here. When an appellant

does not develop a plain error argument in his brief, this Court will not create one on his behalf. *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41; *State v. Grad*, 9th Dist. Medina No. 15CA0014-M, 2016-Ohio-8388, ¶ 18.

{¶28} Accordingly, Mr. Khalfani's argument lacks merit and his fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR FIVE

**OSIRIS'S SENTENCE WAS CONTRARY TO LAW[.]**

{¶29} Mr. Khalfani argues in his fifth assignment of error that his sentence was contrary to law because the trial court did not fix a specific dollar amount for his fine as required by R.C. 2929.02. In support, he points to the following language in the trial court's sentencing entry: "IT IS FURTHER ORDERED that the Defendant shall pay a fine in this case and that the U.S. Currency confiscated from the Defendant in the amount of $9,757.00 shall be applied first toward court costs, with [the] balance applied as a fine."

{¶30} As the State correctly points out, the record reflects that the parties agreed that the $9,757 confiscated at the time of Mr. Khalfani's arrest would cover the fine and court costs; specifically, after the amount of court costs was determined, the remaining balance would constitute the fine. While Mr. Khalfani does not address the fact of this agreement in his brief, the record does not reflect that he was coerced or that the agreement was somehow non-consensual.

{¶31} Moreover, Mr. Khalfani was found guilty of aggravated murder under R.C. 2903.01(A). Pursuant to R.C. 2929.02(A) ("Penalties for murder"), whoever is convicted of aggravated murder in violation of R.C. 2903.01 may not be fined more than $25,000. Mr. Khalfani's fine is less than $25,000; therefore, regardless of the lack of specificity in the trial

court's order, the amount does not exceed the maximum penalty such that he was prejudiced by it. Based on the foregoing, Mr. Khalfani's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR SIX

**OSIRIS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON HIS DIRECT APPEAL.**

**{¶32}** In his sixth assignment of error, Mr. Khalfani argues that he received ineffective assistance of appellate counsel because his appellate counsel did not raise the following issues as set forth in assignments of error one through four: (1) his convictions were not based upon sufficient evidence; (2) the trial court erred by permitting the government to use his post-arrest silence; (3) the trial court was biased against him; and, (4) his sentence was contrary to law. For the following reasons, we reject his argument.

**{¶33}** App.R. 26(B)(9) instructs appellate courts to review claims of ineffective assistance of appellate counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Graves*, 2011-Ohio-5997, at ¶ 9. "To show ineffective assistance of appellate counsel, [Mr. Khalfani] must prove that his counsel was 'deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims on appeal.'" *Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, at ¶ 26, quoting *State v. Sheppard*, 91 Ohio St.3d 329, 329 (2001).

**{¶34}** This Court has reviewed the merits of each of the underlying arguments Mr. Khalfani has alleged in support of his claim of ineffective assistance of appellate counsel. Our resolution of those arguments, set forth in our analysis under assignments of error one through five, demonstrates that Mr. Khalfani would not have been successful had his first appellate attorney adequately raised those issues on direct appeal. "Since this Court has reopened [Mr. Khalfani's] appeal and addressed his additional arguments on the merits, he has received an adequate remedy

for any alleged error by counsel and cannot demonstrate prejudice." *Powell* at ¶ 30. As such, his sixth assignment of error is overruled. *Accord State v. Knight*, 9th Dist. Summit No. 29057, 2020-Ohio-6709, ¶ 56.

## III.

**{¶35}** Mr. Khalfani's assignments of error are overruled. Pursuant to App.R. 26(B), this Court confirms its prior decision in *State v. Khalfani*, 9th Dist. Summit No. 30330, 2023-Ohio-1963. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.